```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                      WESTERN DIVISION


JANIS BURNWORTH                                        PLAINTIFF

VS.                         CIVIL ACTION NO. 5:07-cv-69(DCB)(JMR)

VICKSBURG WARREN SCHOOL DISTRICT                       DEFENDANT
```

MEMORANDUM OPINION AND ORDER

This cause is before the Court on the defendant Vicksburg Warren School District ("School District")'s motion for summary judgment **(docket entry 24)**. Having carefully considered the motion and response, the memoranda and the applicable law, and being otherwise fully advised in the premises, the Court finds as follows:

This is an employment discrimination case brought pursuant to the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and Mississippi common law. The plaintiff, Janis Burnworth ("Burnworth"), began working for the defendant School District as a teacher in August of 2004, and was terminated at the end of the 2006 school year. Burnworth filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 2, 2006, and a Notice of Right to Sue was issued on January 3, 2007. In addition to her claims under the ADA, the plaintiff claims damages for the "tort of outrage," Complaint, ¶¶ 14-16, and punitive damages, Complaint ¶¶ 17-18, under Mississippi law. The defendant moves for summary judgment on all claims.

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party "... the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ...." Fed.R.Civ.P. 56(c). In determining whether there are any genuine issues of material fact, this Court must first turn to the applicable law to discern what factual issues are, indeed, material. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Fields v. City of South Houston, Tex.</u>, 922 F.2d 1183, 1187 (5th Cir. 1991). Then, the Court must examine the evidence of the type listed in Rule 56(c) to detect the existence or non-existence of a material issue. <u>Id</u>., at 1187. Further, "... summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, at 248. The Fifth Circuit has added:

> Both the Supreme Court and this circuit have addressed, at length, how much evidence the nonmoving party must present. The Supreme Court explained that the standard for granting summary judgment mirrors the standard for a directed verdict. ... "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." ... Nor is the "mere existence of a scintilla of evidence" sufficient .... This circuit has described the amount of evidence the nonmoving party must bring forward as "significant probative evidence." ... This may be equated with the "substantial evidence" standard used to determine whether a directed verdict is appropriate.

<u>State Farm Life Ins. Co. v. Gutterman</u>, 896 F.2d 116, 118 (5th Cir.

1990)(citations omitted).

The moving party bears the initial burden of establishing the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Lavespere v. Niagara Mach. & Tool Works, 910 F.2d 167, 178 (5th Cir. 1990). Once the burden of the moving party is discharged, the burden shifts to the nonmoving party to go beyond the pleadings and show that summary judgment is inappropriate. Id., at 178; Fields, at 1187. The nonmoving party is obligated to oppose the motion either by referring to evidentiary material already in the record or by submitting additional evidentiary documents which set out specific facts indicating the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); Fields, at 1187. If the opponent fails in her duty, summary judgment is implicated. Id., at 1187. The United States Supreme Court has also stated that summary judgment is mandated where sufficient time for discovery has elapsed and a party has failed to establish an essential element of her case upon which she would have born the burden of proof at trial. Celotex, supra, at 322; Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

Burnworth suffers from Multiple Sclerosis ("MS") and degenerative disc disease. Burnworth Depo., p. 10. After diagnosis, she was first recommended for employment as a part-time substitute teacher with the school district during the 2003-2004

3

school year by Charles Hanks, who was the principle of the Vicksburg Intermediate School.  After Burnworth began substituting in the sixth grade, Hanks became concerned about her ability to cope with the students without losing her temper, Hanks Aff., ¶ 3, and Burnworth herself expressed interest in teaching younger students.  Burnworth Depo., p. 46.

During the middle of the 2004-2005 school year, there was a vacancy at the intermediate school and Hanks recommended that Burnworth finish out the school year in the fifth grade class, "hoping that with a younger class it might be easier for her to handle the students without her losing her temper and having to be so loud and abrasive."  Hanks Aff., ¶ 3.  However, in Hanks's opinion, "she was still loud and abrasive and ... those students who were quiet and reserved felt very uncomfortable in her class."  Hanks Aff., ¶ 3.

For the 2005-2006 school year, Hanks recommended Burnworth to a full-time teaching position, but decided to place her in a still younger class, the fourth grade, again hoping that she would feel less stress and pressure, and be able to manage the class without being so harsh and abrasive.  Hanks Aff., ¶ 4.  When the problem continued, Hanks assigned Burnworth to a new teacher mentoring program, taught by two experienced teachers, Ann Sherard and Peggy Gouras.  Hanks Aff., ¶ 4.  Hanks asked Sherard and Gouras to help Burnworth "on her classroom management techniques and particularly

4

the tone in which she related to her students." Hanks Aff., ¶ 4. The teaching mentors gave presentations once a month and worked with the teachers individually, which included observing in their classrooms. Burnworth Depo., pp. 38-39. Hanks stated that after the sessions, Burnworth "would be better for a few days but then would quickly regress to her harsh, aggressive and loud manner." Hanks Aff., ¶ 4.

Sherard, one of the teaching mentors, stated that she and Gouras were concerned about the manner in which Burnworth taught and interacted with her students, particularly her loud, harsh and caustic tone of voice. Sherard Aff., ¶ 3. The two mentors counseled Burnworth and tried to encourage her to be positive in her interactions with students. Burnworth, however, indicated that she did not think that was a problem because she had a difficult class to manage, her students were accustomed to her tone, and her students "knew she was kidding." Sherard Aff., ¶ 3. Sherard states that she and Gouras

> suggested recognizing positive behavoirs as well as several options for classroom management. I remember I was present on one occasion when a student ... was not responding to questions and I became very uncomfortable during Ms. Burnworth's aggressive chiding to get him to respond. I asked Ms. Burnworth about that and she said the technique worked. Ms. Gouras gave her an audio tape to record herself while teaching with the hope that if she heard the harshness and caustic tone of her voice she might realize the problem. However, during a follow-up visit, Ms. Burnworth said it had not been beneficial.

Sherard Aff., ¶ 3. Sherard also states that Hanks expressed

concern to the mentors about Burnworth's loud, harsh manner of interaction with her students, and that he never expressed concern "about her health issues or any disability." Sherard Aff., ¶ 4.

The School District has also submitted affidavits of parents whose children were in Burnworth's class. One mother states that although her daughter had been an A-B student who loved teachers and loved going to school, she dreaded going to Burnworth's class and complained about being yelled at all day long. On one occasion, when this mother was visiting in the classroom, Burnworth threatened a student saying she would "rip off his head and stick it in a coke can." Affidavit, Defendant's Exhibit F. Another mother states that her son was an honor student who had previously loved his teachers and loved school, but when he had Burnworth for a teacher, he hated going to school and begged his parents to withdraw him from the public school and enroll him in a private school. He came home terrified of the screaming and hollering and threats by Burnworth. On one occasion, Burnworth refused to let the boy call home. This mother states that not only was her son terrified of Burnworth, but that she and other parents were scared of her also. Affidavit, Defendant's Exhibit G.

Burnworth was sent a letter dated April 3, 2006, by the Superintendent of Education advising that she had not been recommended for re-employment. Defendant's Exhibit C. After Burnworth was advised that her contract was not going to be

renewed, she asked to speak with the Superintendent of Education, Dr. James G. Price.  Dr. Price went to the school to visit with her, and had the assistant principal take him to Burnworth's class so that the assistant principal could watch the students while he met with Burnworth.  As he approached Burnworth's classroom, Dr. Price heard loud noises and determined that someone was screaming at the students.  He asked the assistant principal who it was and he was told it was Burnworth.  Price Aff., ¶ 3.  After the assistant principal went in to tell Burnworth that the superintendent was there to speak with her, Dr. Price heard her voice change immediately and she became apologetic to the students.  Price Aff., ¶ 4.  Having another appointment, the superintendent left without meeting with Burnworth.  In his opinion, Burnworth's shouting and screaming at her students, and being aggressive and harsh with them, was not proper classroom behavior.  Price Aff., ¶ 5.

    Although Burnworth had not been recommended for re-employment by her previous principal, Charles Hanks, she was not banned from employment with the School District, and she in fact submitted her resumé and application for other teaching positions in the district.  Dr. Edward Wiggins, the principal at another intermediate school, saw Burnworth's resumé and application and called her in for an interview for a possible teaching job for the 2006-2007 school year.  Wiggins states:

>    Ms. Burnworth had an impressive portfolio.  However, during her interview with me, she told me that in order to control a particular student the preceding year, she had told that student that she would "cut off his head and spit down his neck."  Although I was shocked at this language, Ms. Burnworth seemed quite proud that this threat had proved effective in her opinion.
>
>    In my opinion, that sort of threat of violence was not appropriate even in a high school setting, much less with an elementary student. After the interview, I called her previous principal, Mr. Hanks, and told him about her remark.  He confirmed that her statement was reflective of her tone and attitude with the students at his school and that was the reason he had not recommended her back, even though she was otherwise a good teacher.

Wiggins, Aff., ¶¶ 3-4.

When Burnworth was not re-employed with the Vicksburg Warren School District, she applied for a job with the Hinds County School District teaching second grade at the Edwards/Bolton Elementary School.  She was granted a regular teacher's contract of 187 days, but only worked the month of August 2006 and then resigned. Burnworth Depo., pp. 13, 17.  After resigning from the Hinds County School District, she went to work with her father at Mid Delta Cotton Processors in Belzoni for a few months.  Burnworth Depo., pp. 49-50.  Although she did not apply for any other work, the Hinds County School District Offered her a teaching job the following year, but she states she "physically couldn't do it." Burnworth Depo., p. 16.

On August 2, 2006, Burnworth filed her Charge of Discrimination with the EEOC complaining that her principal and the superintendent had told her that she was not entitled to a reason

for her termination, and that she believes "this is because of my illness and the fact that had I remained another year, I would have become tenured." EEOC Charge, p. 1.  In her EEOC Charge, Burnworth did not claim that she had requested any accommodation or that any accommodation had been denied her.  EEOC Charge, p. 2.  She was granted a right to sue letter by the EEOC and filed her Complaint in this Court on April 2, 2007.  On April 12, 2007, Burnworth served a "Notice of Claim for Damages" with the Superintendent of Education, which is required by the Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. § 11-46-11 et seq.

The School District moves for summary judgment, in part on the basis of the MTCA.  Miss. Code Ann. § 11-46-11 requires that before any person who has a claim against a governmental entity shall proceed, she must file a notice of claim 90 days prior to filing suit.  Burnworth's Complaint was filed on April 2, 2007.  Her "Notice of Claim for Damages" was not filed until after her Complaint.  The Mississippi Supreme Court has adopted a strict compliance rule with regard to the notice provisions of the MTCA, and failure to provide the 90 days notice is grounds for summary judgment.  University Medical Center v. Easterling, 928 So.2d 815 (Miss. 2006); South Central Regional Medical Center v. Guffy, 930 So.2d 1252 (Miss. 2006).  The plaintiff has conceded to the dismissal of her state law claims.  Plaintiff's Brief, p. 3.

The School District also moves for summary judgment by

claiming that Burnworth cannot establish a prima facie case of discrimination under the ADA. Burnworth has not presented any direct evidence of disability discrimination; therefore, in order to succeed on her ADA claim, she must establish a prima facie case of discrimination which requires proof that (1) she was disabled within the meaning of the ADA; (2) she was qualified for the position, with or without an accommodation; (3) she suffered an adverse employment decision because of her disability; and (4) she was replaced by a non-disabled person. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 792, 802 (1973); Andress v. National Pizza Co. Intern., Inc., 984 F.Supp. 475, 486 (S.D. Miss. 1997). "If the plaintiff succeeds in making the prima facie case, the burden then shifts to the employer to rebut the initial showing. If, however, the plaintiff cannot succeed in making a prima facie case, summary judgment is warranted." Andress, at 486.

 The School District does not dispute that Burnworth can show the first, third and fourth prongs of a prima facie case, but argues that she cannot show she was qualified for the position. The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To avoid summary judgment on whether she is a qualified individual, the plaintiff must show "(1) that [s]he could

perform the essential functions of the job in spite of her disability; or (2) that a reasonable accommodation of [her] disability would have enabled her to perform the essential functions of the job." Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1093 (5th Cir. 1996). Burnworth does not argue that she requested an accommodation, nor that a reasonable accommodation of her disability would have enabled her to perform the essential functions of her job; therefore, the Court focuses on whether she could perform the essential functions of her job in spite of her disability.

According to the School District, Burnworth's own testimony indicates that she cannot establish that she is qualified for the teaching position:

> After her employment contract was not renewed with the Vicksburg Warren School District, Burnworth applied for and was granted an elementary teaching job at the Edwards Elementary School, which is part of the Hinds County School District. However, she resigned that employment after only one month. (Burnworth Depo., p. 17). Despite her resignation, Burnworth testified that the Hinds County School District offered her a teaching job the following year also, but Burnworth refused the employment claiming she "physically couldn't do it." (Burnworth Depo., p. 16). Therefore, if for whatever reason, Burnworth can no longer teach elementary school for the Hinds County School District, then she is not qualified to teach elementary school for the Vicksburg Warren School District and her Complaint must be dismissed.

Defendant's Brief, p. 10. In support of its argument, the defendant cites Vasquez v. Laredo Transit Management, Inc., 5:06cv94 (S.D. Tex., Memorandum Opinion and Order, August 16,

2007), and Grubb v. Southwest Airlines, 3:05cv1934 (N.D. Tex., Memorandum Opinion and Order, June 11, 2007).

In Vasquez, the issue was whether the plaintiff could perform the essential functions of a bus driver at the time of his termination because he was unavailable for work. The district court found that because Vasquez could not attend work, he was not "'"a qualified individual with a disability" under the ADA ... [since] an essential element of any ... job is an ability to appear for work ... and to complete assigned tasks within a reasonable period of time.'" Vasquez, p. 20 (quoting Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 759 (5th Cir. 1996)(alteration in original). In Grubb, the district court concluded "[f]rom the undisputed facts in the record ... [that] Grubb could not perform the essential functions of his job, and that Southwest reasonably accommodated Grubb's condition." Grubb, p. 12. Grubb suffered from several behavioral problems, including "nodding off at work while training students in the simulator, during instructor meetings and during office hours; tardiness; and missing office hours," and "unexcused absences from work," Id., p. 2.

In this case, the School District does not argue excessive absences or tardiness on Burnworth's part. In fact, the defendant does not argue that Burnworth could not perform the essential functions of her job at the time of her termination. Instead, the defendant focuses on subsequent events which have no relevance to

12

whether she was qualified for her job with the School District at the time of her termination.  Therefore, for purposes of the summary judgment motion, the Court assumes that Burnworth has established a prima facie case.

"Once the plaintiff makes [her] prima facie showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." McInnis v. Alamo Cmty. Coll. Dist., 207 F.3d 276, 280 (5th Cir. 2000).  "Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination."  Id.

In this case, the School District has articulated a legitimate, non-discriminatory reason for the non-renewal of Burnworth's contract: her temper and her loud, harsh and abrasive manner with her students.  This reason is "clear and reasonably specific."  Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 258 (1981).  It is supported with affidavits of Principal Hanks, Superintendent Price, Ann Sherard, and Principal Wiggins, as well as affidavits of two parents of students of the plaintiff.  The defendant has set forth evidence that, "if believed by the trier of fact would support a finding that unlawful discrimination was not the cause of the employment action."  Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993 (5th Cir. 1999).

13

Because the School District has set forth a legitimate reason for terminating Burnworth, the burden shifts back to the plaintiff to show that these reasons are mere pretext for unlawful discrimination. To withstand summary judgment, she must point to a "genuine issue of material fact concerning pretext." Moore v. Eli Lilly & Co., 990 F.2d 812, 815 (5th Cir. 1993). The plaintiff's evidence must "consist of more than a mere refutation of the employer's legitimate nondiscriminatory reason," and she must "do more than 'cast doubt on whether [the employer] had just cause for its decision.'" Moore, 990 F.2d at 815 (citations omitted) (alteration in original). Pretext must be established by showing either "that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256.

Burnworth argues that she believes her disability was a motivating factor in her termination because the School District refused to give her a reason for its action. The Mississippi Education Employment Procedures Act provides that employees covered by the Act are entitled to: (a) notice of reasons for not offering the employee a renewal of the contract; (b) an opportunity to present matters in extenuation or exculpation; and (3) a hearing before the school board. Miss. Code Ann. § 37-9-101. However, Burnworth was not covered by this section because the Act defines "employee" as "any teacher ... employed by the local school

14

district for a continuous period of two years with that district and required to have a valid license issued by the State Department of Education as a prerequisite of employment." Miss. Code Ann. § 37-9-103.  Superintendent Price states that he "advise[s] all principals that if they have any doubts about a new teacher, we should advise them that their contract is not being renewed before they complete the second full year so as to avoid the expense of a formal hearing.  Upon advise of counsel, I also advise principals not to give reasons to a teacher not covered by the Act so as to avoid any possible liability for libel, slander or damage to the teacher's reputation."  Price Aff., ¶ 2.  Similarly, Principal Hanks states: "When it became time for principals to make their recommendations for the hiring of teachers for the next school year, all the principals were reminded by the district administration that under the current state law we could choose not to recommend teachers who have less than two years experience with the school district without having to provide those teachers with a hearing or reasons under the Education Employment Procedures Law, and that if we were in doubt about a particular teacher, we should exercise that privilege."  Hanks Aff., ¶ 5.

 The defendant was under no obligation to explain its employment action to the plaintiff at the moment of termination. The School District has offered a legitimate non-discriminatory reason for its refusal to respond to Burnworth's request, and she

15

has offered no evidence that the refusal was a deviation from the School Board's policies and customary procedures. See Bombero v. Warner-Lambert Co., 142 F.Supp.2d 196, 203 n.8 (D. Conn. 2000). Burnworth's subjective belief that her disability played a role in the defendant's employment decision is insufficient to create a genuine issue of material fact that the defendant's proffered reason is pretext.

The School District has come forward with a legitimate, non-discriminatory reason for its employment action; Burnworth, however, has presented no evidence indicating that the School District's reason for not renewing her contract is mere pretext for unlawful discrimination. The defendant's motion for summary judgment shall therefore be granted. Accordingly,

IT IS HEREBY ORDERED that the defendant Vicksburg Warren School District's motion for summary judgment **(docket entry 24)** is GRANTED, and all claims are dismissed with prejudice.

A separate final judgment dismissing this action in accordance with Rule 58 of the Federal Rules of Civil Procedure shall follow.

SO ORDERED, this the 24th day of July, 2008.


/s/ David Bramlette
UNITED STATES DISTRICT JUDGE